# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CRYSTAL FITEZ-SKEENS, | : Case No. 3:17-cv-00313 |
| Plaintiff, | : District Judge Thomas M. Rose |
| | : Magistrate Judge Sharon L. Ovington |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

The Social Security Administration denied Plaintiff Crystal Fitez-Skeens' June 2014 applications for Disability Insurance Benefits and Supplemental Security Income. She brings the present case challenging those denials and asserting she is under a work-precluding disability due to her many health problems, including serious, chronic, and debilitating pain. Her contentions focus on the decision by Social Security Administrative Law Judge Benjamin Chaykin, who concluded that she was not under a disability because, in large part, she could still perform a limited range of light work. Plaintiff contends that ALJ Chaykin failed to properly evaluate her symptoms including her pain.

The Commissioner contends that substantial evidence supports the ALJ's

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

evaluation of the severity of Plaintiff's symptoms and the impact her symptoms, including pain, have on her work abilities.

Plaintiff was thirty-one years old—a "younger" person—at the time of the ALJ's decision. *See* 20 C.F.R. § 404.1563(c). She has a high-school-equivalent education. Her employment and earnings over the years have been sparse.

Plaintiff testified during a hearing held by ALJ Chaykin that she has two young children and is not married. At the time of the ALJ's hearing (May 2016), she worked twenty hours a week at a nail salon as a fingernail technician owned by her mother. She usually worked five days a week from 10:00 to 2:00, depending on how much pain she was in. Her mother was sympathetic to Plaintiff's health problems and allowed her to miss work "quite often." *Id*. at 212. She testified that she missed at least two to three work days per week. She worked on commission so her earnings depended upon how many customers she could handle, usually two to four each workday. When no customers needed her assistance, she usually answered the phone. (Doc. #6, *PageID* #s 207-08). The ALJ found that neither this work nor any work Plaintiff performed after late February 2016 constituted substantial gainful activity. *Id*. at 177.

Plaintiff also told the ALJ that in 2014, she underwent carpal-tunnel surgery in both hands. The surgery "helped to a certain extent." *Id*. at 210. Yet she still felt numbness extending up her arms. When she started working as a fingernail technician, the numbness radiated through her neck and shoulders. After she completed a 4-hour shift at work, her hands would be numb yet also feel like they were trying to wake up. *Id*. at 212-13. She explained that she did not think she could continue working at the end of

a shift because her hand numbness would continue to worsen.

Plaintiff's knees have also caused her significant problems. She's endured three surgeries on her left knee and one on her right knee. She can stand for only ten to fifteen minutes. She's had additional problems with back pain and additional treatments for them: injections, steroids, physical therapy. She told the ALJ that back surgery is in her future.

During the two-year period before the ALJ's hearing, Plaintiff had gained weight. She attributed this to "[s]tress, physical limitations that stress [her] out, make [her] depressed and eat…." *Id*. at 215. She cannot exercise. She noted, "I tried to walk a little bit but there's only so much I can do but I can't do actual exercises now." *Id*.

Plaintiff has also experienced mental-health difficulties. She listed her diagnoses for the ALJ as post-traumatic stress disorder, anxiety, depression, and another diagnosis she could not recall. She felt nervous and scared, and she's disappointed in herself. She further testified about the connection between her pain and her mental-health difficulties:

> Well, like when I'm working and stuff and I feel the pain coming on and it's getting worse and it's getting stronger, I feel more like my heart starts racing, I feel more anxiety, I feel more depressed because I'm like oh my God I can't do this again, you know, I feel bad about not being able to do stuff with my children and work and having to rely and depend on everybody else.

*Id*. at 216.

During a typical day, Plaintiff helped her children get ready for school. Her fiancé usually took them to school. If she did not go to work, she would sit or lie on the couch and not "really do much." *Id*. at 217. During the day, she watched TV and read to pass

3

the time. She did not use social media or spend time with friends. She "doesn't really have any friends." *Id*. She was able to do some dishes but she can't stand for very long. She swept the floor and did a lot of laundry. Yet, when she tried to do too much with her arms (folding laundry or maneuvering things), her shoulders, neck, and hands started hurting. Her hands would get numb when she did a lot of laundry. *Id*.

Plaintiff's driving was limited. She drove herself to and from work but, other than that, she drove only to and from doctor appointments. *Id*. at 205.

Turning to ALJ Chaykin's decision, he concluded that Plaintiff was not under a disability by conducting the 5-step evaluation required by social security law. *See* 20 C.F.R. § 404.1520(a)(4). His more significant findings began with his conclusion that Plaintiff had the severe impairments of degenerative disc disease in her lumbar spine and cervical spine; degenerative joint disease in her knees with residuals of corrective surgery; obesity; carpal tunnel syndrome with residuals of corrective surgery; hypertension; and anxiety disorder. The ALJ next found that Plaintiff's impairments did not automatically constitute a disability.[2] (Doc. #6, *PageID* #s 177-83).

The ALJ then assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, he found that despite Plaintiff's impairments, she could still perform light work with twelve limitations,

---

[2] A social security applicant with a condition that meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is automatically under a disability. *See* 20 C.F.R. § 404.920(a)(iii); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

4

including, for example:

> (1) standing/walking no more than four hours during any given eight-hour workday and no longer than 30 minutes per hour; (2) sitting up to six hours in an eight-hour workday; (3) no climbing ropes, ladders, or scaffolds;… (10) no more than occasional interaction with supervisors and coworkers; (11) limited to working in a static environment with few changes in work setting; (12) no duties involving teamwork or tandem tasks.

(Doc. #6, *PageID* #183).

The ALJ further determined that, given Plaintiff's residual functional capacity, high-school education, work experience, and age, she could still perform a significant number of jobs available to her in the national economy. Her ability to perform those jobs meant that she was not under a benefits-qualifying disability, in the ALJ's view. *Id.* at 188-89.

The present judicial review of ALJ Chaykin's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Substantial evidence supports an ALJ's conclusion evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support [the] conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff focuses on ALJ Chaykin's evaluation of her symptoms—especially her pain. The ALJ recognized that Plaintiff has a significant history of musculoskeletal problems involving her knees, hands, neck, and lower back. (Doc. #6, *PageID* #184). The ALJ correctly observed that MRI scans of Plaintiff's lumbar spine showed degenerative abnormality at L4-5 and L5-S1 "but no evidence of disc herniation." *Id.* Substantial evidence cited by the ALJ confirms this. *See id.* (citing Exhibits 24F at 180, 25F at 66, and 27F at 3).

The ALJ further found in part:

> The extent of (physical or mental) limitation alleged is largely unsubstantiated by convincing objective medical evidence or clinical findings. The evidence generally does not support the alleged loss of functioning. The claimant has sufficient physical capacity and adequate mental acuity to live independently. She helps maintain a household that includes her fiancé and her two dependent children. The claimant operates a motor vehicle. She helps her children prepare for school. The claimant does light household chores. The claimant works part time (from 10 am to 2 pm) five days per week at a beauty salon as a nail technician. She also does work as a receptionist. Her ability to act in such capacity presupposes somewhat intact physical abilities and mental capabilities (certainly beyond the level alleged).

(Doc. #6, *PageID* #s 186-87).

In years past, ALJ decisions penetrated the murky realms of pain and credibility. *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must … evaluate the applicant's credibility with

6

great care. His responsibility is all the greater because determinations of credibility are fraught with uncertainty…." (citation omitted)). More recently, in March 2016, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character…." Soc. Sec. R. 16-3p, 2016 WL 1119029, *1 (March 16, 2016).[3] Consequently, character is not destiny in social security cases. Destiny for social security claimants is controlled by longstanding rules: "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citing *Young v. Sec'y of HHS,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y of HHS,* 801 F.2d 847, 852 (6th Cir. 1986)); *see* 20 C.F.R. § 404.1529(a). A two-step inquiry applies.

First, the ALJ determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, such as pain. *Id*. at *2; *see* 20 C.F.R. § 404.1529(a). This does not look at the <u>severity</u> of a claimant's pain or other symptoms. Ruling 16-3p makes the point crystal clear by way of example:

> [I]f an individual has a medically determinable impairment established by a knee x-ray showing mild degenerative changes, and he or she alleges extreme pain that limits her ability to stand and walk, we will find that individual has a medically determinable impairment that could reasonably be expected to produce the

---

[3] ALJ Chaykin noted that he considered the evidence under the requirements of Ruling 16-3p (and other Rulings and Regulations). (Doc. #6, *PageID* #185).

7

symptom of pain. We will then proceed to step two of the two-step process, even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence.

Ruling 16-3p, *3. Proceeding to the second step—where severity is investigated—ALJs consider "the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." 20 C.F.R. § 404.1529(a); Ruling 16-3p, 2016 WL 1119029, at *2. The many relevant factors may include, for instance, "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms…." *Rogers*, 486 F.3d at 247 (citations omitted); *see* Ruling 16-3p (citing factors in 20 C.F.R. § 404.1529(c)(3)).

In the present case, ALJ Chaykin found that the record contains objective evidence sufficient to demonstrate that Plaintiff has several medically determinable impairments that could cause pain. These appear in his findings that Plaintiff has the severe impairments of degenerative disc disease in her lumbar spine and cervical spine, degenerative joint disease in her knees with residuals of corrective surgery, and carpal tunnel syndrome with residuals of corrective surgery. *See* Doc. #6, *PageID* #s 177-78.

Plaintiff contends that the ALJ erred at the second step of the required symptom analysis by erroneously relying only on good clinical findings to conclude that her pain was adequately controlled. She contends that the ALJ failed to consider the evidence documenting clinical observations supporting the conclusion that she is in serious and disabling pain. She points to observations made during examinations such as restricted

range of motion in her lumbar spine and knees, crepitus in her knee, left-knee swelling, lumbar-spine swelling, muscle spasms, antalgic gain, positive straight-leg raising, diminished reflexes, and diminished strength in her upper extremities. And she provides additional examples of examination findings with citations to the record. (Doc. #8, *PageID* #4532-43). She further argues that the ALJ erred by examining her multiple orthopedic impairments separately and by relying on state-agency, record-reviewing physicians.

The ALJ's review of Plaintiff's pain levels properly took into account the objective evidence of her medically determinable impairments and properly evaluated the intensity and persistence of Plaintiff's pain and the impact it had on her work abilities. The ALJ observed that no surgery had been recommended for Plaintiff's spinal disorder, noting that an MRI of her lumbar spine showed a degenerative abnormality but no evidence of disc herniation, and an MRI of her cervical spine showed bulging but no significant foraminal compromise. *Id*. at 184. Substantial evidence, cited by the ALJ, verifies his observations and his resulting conclusion that "[t]hese clinical findings do not appear to conform to the (disabling) extent of pain and numbness alleged." *Id*.; *see PageID* #s 4293, 4381, 4408.

Plaintiff points out that Ruling 16-3p provides the examples of symptoms that can be clinically observed. The Ruling states, "Examples of such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain." 2016 WL 1119029, at *5. Plaintiff argues that her medical records contains such findings "and many other clinical signs of

9

pain multiple times." (Doc. #8, *PageID* #4532). Plaintiff then lists many such findings with citations to the administrative record. Plaintiff's reliance on certain medical evidence, however, runs into two stumbling blocks. First, none of her treating medical sources have provided opinions about the impact Plaintiff's symptoms, including pain, have on her ability to perform work activities over the course of at least a one-year period. In this situation, the ALJ did not err by placing moderate weight on the opinions of the record-reviewing physicians, particularly where the ALJ found Plaintiff more limited than those physicians. The ALJ found Plaintiff limited to light work with restrictions on her ability to stand, sit, walk, and engage in other physical activities (no climbing ropes, for instance). (Doc. #6, *PageID* #165).

Second, although Plaintiff's medical records confirm that she has, at times, experienced clinical signs such as restricted range of motion of her lumbar spine and knees, crepitus in her left knee, swelling or her left knee and lumbar spine, etc., *see id.*, a review of the records she relies on uncovers little probative evidence documenting the severity of her pain or more significantly, the limitations Plaintiff's pain and other symptoms imposed on her work abilities. A few examples suffice: In September 2010, examination of Plaintiff's back produced "pain on palpation in the lower back, this is very, very minimal." (Doc. #6, *PageID* #789). She had "some mild knee swelling where she had arthroscopic surgery done in the past but she has full range of motion." *Id*. A February 2010 left-knee x-ray showed her "bones, joints and adjacent soft tissues … to be in normal appearance. No fracture, dislocation, soft tissue swelling or soft tissue calcification are evidence." *Id*. at 804. In early January 2015, Plaintiff reported

"moderate," rather than serious or severe or debilitating, left-knee pain. *Id*. at 934. The physician assessed Plaintiff with a tear in her medial cartilage or meniscus and recommended an MRI. *Id*. at 935. But, the physician noted at Plaintiff's next office visit that an MRI of her left knee showed "chondromalacia without evidence of meniscal tear." *Id*. at 932. An examination in June 2015 revealed that Plaintiff's neck and lumbar spine were in "normal clinical alignment and stability, no tenderness, appropriate range of motion and strength." *Id*. at 3828. Plaintiff reported right-shoulder pain and examination showed tenderness but full active and passive range of motion and "all stability tests are negative." *Id*. at 3829. She had positive impingement sign, Hawkin's test, NEER, and drop-arm test. *Id*. But her right-shoulder x-ray showed no evidence of arthritis or acute fractures or boney pathology. On June 8, 2015, Plaintiff was experiencing right-knee pain but her orthopedic surgeon noted, "Her knee looks really, really good…." *Id*. at 3838. He therefore referred Plaintiff to another physician (Dr. Rogers) to manage her pain. Contrary to Plaintiff's view, this and other evidence provides reasonable support for the ALJ's assessment of Plaintiff's pain. As a result, substantial evidence supports the ALJ's assessment even though the record also indicates that Plaintiff experienced pain and other symptoms. *See Jones*, 336 F.3d at 475 ("we must defer to an agency's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" (citation omitted).

The ALJ also determined that Plaintiff underwent carpal-tunnel surgery on both hands. However, the ALJ noted that the surgeries were successful and that Plaintiff

11

continued working part-time as a nail technician. (Doc. #6, *PageID* #184). The latter point was a valid consideration even though Plaintiff testified that her part-time work caused her serious physical problems, including increased pain and swelling, and her employer (her mother) accommodated her health problems. As indicated above, substantial evidence supports the ALJ's conclusions about the objective medical evidence and clinical findings. The ALJ, moreover, considered that Plaintiff is able to live independently and help maintain her household "that includes her fiancé and her two dependent children." *Id*. at 186-87. These were proper factors to consider when assessing Plaintiff's pain and other symptoms. "[T]here is nothing patently erroneous in the ALJs decision to rely on her [or his, in this case] own reasonable assessment of the record over the claimant's personal testimony." *White v. Comm'r of Social Sec*., 572 F.3d 272, 287 (6th Cir. 2009);[4] *see* 20 C.F.R. § 404.1529(a).

Plaintiff faults the ALJ for noting that her "primary motive" in seeking treatment was to obtain drugs. Plaintiff mischaracterizes this part the ALJ's decision. The ALJ explained that Plaintiff's condition "may be complicated" due a misuse of prescribed narcotic. (Doc. #6, *PageID* #179). The ALJ's analysis was reasonable. As the ALJ noted, "[o]n more than one occasion, [Plaintiff] requested a higher dosage of psychotropic medication or more narcotic pain medication but such requests were denied" *Id*. (citing *PageID* #s 4394, 4408). On August 4, 2015, Plaintiff's treating physician Chad Weber, D.O., noted that she had "obvious pain medication issues" and

---

[4] *White* parenthetically quotes from the now superseded Ruling 96-7p. But, this quoted statement from *White* remains valid law. *See* 20 C.F.R. § 404.1529(a); Ruling 16-3p at 2016 WL 1119029 at *1-*2.

that he planned on discontinuing her treatment. *Id*. (citing *PageID* #s 3813-14, 4091). This evidence reasonably suggests that Plaintiff was misusing her medication.

Plaintiff argues that the ALJ improperly analyzed her orthopedic impairments because he discussed them separately. The ALJ, however, sufficiently indicated that he considered Plaintiff's orthopedic problems individually and collectively. He did so at Step 3 of his sequential evaluation. *Id*. at 182-83. At Step 4 of the sequential evaluation, he recognized, "[t]he claimant clearly has a significant history of musculoskeletal problems involving the knees, the hands, the neck and the lower back." *Id*. at 184. He then discussed Plaintiff's treatment regimen noting that she had "multiple knee surgeries and bilateral carpal tunnel release surgery as well as conservative care for complaints of back pain." *Id*. In the same paragraph, he examined the results from MRIs of Plaintiff's lumbar and cervical spine and reasonably remarked that the bilateral carpal tunnel surgeries were apparently successful because there was no evidence of more recent treatment for ongoing symptoms involving the hands. *Id*. The ALJ then wrote, "given the claimant's treatment history for multiple musculoskeletal problems, it is found that she may not be capable of performing the strenuous exertional activities associated with medium-to-very-heavy work." *Id*. These aspects of the ALJ's decision, along with his assessment of her residual functional capacity—light work with additional restrictions on her ability to stand, walk, and perform postural and manipulative activities, *id*. at 183-84—demonstrate the ALJ considered Plaintiff's impairments in combination when determining whether she was disabled. *Cf. Johnson v. Chater*, No. 95-4330, 1996 WL 325554, *1 (6th Cir. June 12, 1996) ("The ALJ stated that he evaluated Johnson's

13

impairments in combination. Therefore, no further discussion is required by the ALJ." (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

Plaintiff criticizes the ALJ for assessing her residual functional capacity because he was not a doctor. She argues, "He has no medical training upon which to base his own opinion concerning [her] ability to perform the functional requirements of work resulting from her physical impairments. (Doc. #8, *PageID* #4535). This contention lacks merit. Social security regulations, rulings and case law state that ALJs, not physicians, are responsible for determining a claimant's residual functional capacity based on the evidence as a whole. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); Soc. Sec. R. 96-5p, 1996 WL 374183 (July 2, 1996).

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.

*Poe v. Comm'r of Social Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citations omitted).

Plaintiff contends that at the very least, the case should be remanded for a medical expert to review the entire record. The regulations, specifically "20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony, stating that ALJs "may ... ask for and consider opinions from medical experts on the nature and severity of [a

14

claimant's] impairment(s)...." *Simpson v. Comm'r of Social Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) (citations omitted). In the present case, the lengthy medical record was not so complex or confusing that the ALJ needed a medical expert to make sense of it. Rather, this was a case where there was conflicting evidence regarding Plaintiff's ability to work. The ALJ weighed the evidence and reasonably concluded that Plaintiff could perform a limited range of light work. The ALJ did not act as his own medical expert by evaluating the medical and non-medical evidence before assessing Plaintiff's residual functional capacity. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's decision denying Plaintiff's June 23, 2014 protectively filed applications for benefits be affirmed; and

2. The case be terminated on the docket of this Court.


July 31, 2018
*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).